IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BON VIVANT CATERING, INC., )
 )
 )
        Plaintiff, )
   v. ) 1:13CV728
 )
DUKE UNIVERSITY, )
CORE CATERING, INC., and )
PATRICIA EDER, )
 )
        Defendants. )

<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>

     This matter comes before the Court on Defendant Duke University's ("Duke's") Motion to Dismiss Complaint [Doc. #39]. For the reasons that follow, it will be recommended that the instant motion be granted in part and denied in part in that Plaintiff should amend its First Amended Complaint within fourteen days of the Court's Order to add Laura Hall as a Plaintiff, but that the remainder of Defendants' contentions are more appropriately addressed on a motion for summary judgment after discovery, rather than on a motion to dismiss.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

     The First Amended Complaint [Doc. #24] alleges that Laura Hall, owner and operator of Bon Vivant Catering, Inc. ("Bon Vivant" or "Plaintiff"), operated The Refectory Café at the Duke Divinity School beginning in August 2005 pursuant to a contract that required payment of a commission of 10% of gross revenue to Duke Dining Services

("Duke Dining"). (First Am. Compl. [Doc. #24] ¶¶ 14-17.) The First Amended Complaint alleges that The Refectory Café became extremely popular on Duke's Campus (see id. ¶¶ 28-36), and, based on that popularity, a second The Refectory Café location opened at the Duke Law School in 2008, pursuant to a contract that required payment of a commission of 5% of gross revenue to Duke Dining.

However, according to the First Amended Complaint, despite its popular success, The Refectory Café at the Divinity School was not economically sustainable. The First Amended Complaint alleges that "[f]ood costs were greater than 30%, labor costs were greater than 30%, facilities & operating costs were greater than 30%, and on top of all of that The Refectory Café had to pay a 10% of gross revenue commission to Duke Dining Services." (Id. ¶ 37.) The Complaint alleges that as a result, "Laura Hall was personally subsidizing the operation of The Refectory Café at the Divinity School." (Id.)

According to the Complaint, in February 2012, Duke Dining informed Ms. Hall "that if she wanted to renew her contract at the Divinity School – which was scheduled to terminate in July 2012 – that the terms of the renewal and extension would require her to pay 15% of gross revenue as a commission to Duke Dining Services." (Id. ¶ 38.) Ms. Hall met with representatives of Duke Dining and corresponded with Duke's Vice President of Student Affairs in an effort to convey that The Refectory Café at the Divinity School would only be economically sustainable if its commission were instead reduced to the 5% commission paid by the Law School location. Unable to reach an agreement with Duke and

2

Duke Dining, Ms. Hall began planning for the transition of The Refectory Café at the Divinity School to an off-campus location. (Id. ¶ 44.)

The Complaint alleges that, after word spread that The Refectory Café at the Divinity School would be leaving, Duke faced a "massive public relations challenge" (id. ¶ 46) and became "prepared to create a second-rate version of The Refectory Café and then attempt to pass it off to the Duke community as the real The Refectory Café" (id. ¶ 49). According to the Complaint, Duke Dining offered a contract to "a disgruntled former operations manager of The Refectory Café," Defendant Patricia Eder, to operate a restaurant in the location in the Divinity School formerly occupied by The Refectory Café. (Id. ¶ 50.) According to the Complaint, "[t]he new operator opened using The Refectory Café concept, using The Refectory Café Operating Model, using the familiar and same The Refectory Café trained employees smiling behind the counters, using The Refectory Café menu philosophy and options, using The Refectory Café menu pricing, and using the confusingly similar name 'The Divinity Refectory.'" (Id. ¶ 51.) The Complaint alleges that "Duke drafted a contract that required the new vendor to (1) maintain prices consistent with those charged by The Refectory Café; (2) offer a specific menu required by Duke (and . . . bearing a not coincidental resemblance to that of The Refectory Café); and (3) use a name that was designed to, and did, create consumer confusion as to an affiliation, association or sponsorship between The Refectory Café and the new vendor." (Id. ¶ 77.)

As a result of these events, Plaintiff filed the instant action bringing the following

3

Case 1:13-cv-00728-WO-JEP   Document 58   Filed 08/25/15   Page 3 of 17

claims against Duke, Core Catering, and Patricia Eder: (1) "Infringement of a Registered Mark in Violation Title 15 U.S.C. § 1114"; (2) "Unfair Competition in Violation Title 15 U.S.C. § 1125(A)"; (3) "Misappropriation and Misuse of Trade Secrets in Violation of the North Carolina Trade Secret Protection Act, N.C. Gen. Stat. § 66-152, et seq." (4) "Unfair Competition in Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq."; and (5) "Unfair Competition in Violation of North Carolina Common Law." Plaintiff also brings a claim for "Contributory and/or Vicarious Liability under the Lanham Act" solely against Duke, and a claim for "Breach of Fiduciary Duty in Violation of North Carolina Common Law" solely against Defendant Eder. Duke now moves to dismiss all claims brought against it for lack of standing and/or pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, as to any claims not dismissed, Duke seeks an order requiring Plaintiff to provide a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

II.  DISCUSSION

A Complaint fails to state a claim on which relief may be granted under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

4

A.   Counts I-III - Trademark Infringement (15 U.S.C. § 1114, 15 U.S.C. § 1125(a), and Vicarious Liability)

Duke first contends that Plaintiff's claim for violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) cannot be maintained against it because (1) Plaintiff lacks standing to sue for infringement of the registered mark; and (2) the Complaint does not allege use by Duke of the registered mark or any protectable aspect thereof. Duke also contends that Plaintiff's claim for vicarious liability, which is based on Plaintiff's claims of violations of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), must therefore fail for the same reasons.

i.   Standing

As to Plaintiff's standing argument under Section 1114, Section 1114 allows for civil actions brought "by the registrant" for infringement of a mark. 15 U.S.C. § 1114. The term "registrant" "embrace[s] the legal representatives, predecessors, successors and assigns of such . . . registrant." 15 U.S.C. § 1127.

Here, the Complaint alleges that Laura Hall, who is not a party to this action, is the owner of the registered mark at issue, "Refectory Café," while Plaintiff is an "exclusive licensee." (Compl. [Doc. #24] ¶ 53.) Under the foregoing definition of the term "registrant," other courts have typically considered an "exclusive licensee" to fall within Section 1114's definition of a "registrant" only where the licensing agreement confers rights tantamount to those of an assignee. See, e.g., Federal Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 78 (2d Cir. 2013) ("Congress could easily have included 'licensee' or 'exclusive licensee' among the terms in 15 U.S.C. § 1127 that define a

5

'registrant.' It chose instead to limit standing to parties having a more specific set of interests in the registered mark. A plaintiff therefore must show that its 'license' amounts, in fact, to an assignment to establish entitlement to sue under Section 32(1)."); Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 159 (1st Cir. 1977) ("Although one court, at least, has stated that 'only the registrant' can pursue such remedies, other courts have followed the approach used in patent infringement cases and permitted trademark infringement suits to be maintained by exclusive distributors and sellers of trademarked goods, i.e., 'exclusive licensees' who had a right by agreement with the owner of the trademark to exclude even him from selling in their territory."); Aceto Corp. v. TherapeuticsMD, Inc., 953 F. Supp. 2d 1269, 1279-80 (S.D. Fla. 2013) ("Authorities uniformly agree that *only* the Trademark's *registrant* (or [*the registrant's legal representatives, predecessors, successors,* and] *assignee*) may sue under § 32(1). However, some courts consider a truly exclusive licensee, one who has the right to even exclude his licensor from using the Mark . . . [to be] equated with an assign[ee] since no right to use [the Mark] is reserved to the licensor, and the licensee's standing derives from his presumed status as an assignee." (internal quotation marks and citations omitted) (italics and alterations in original)); Newsboys, Inc. v. Warner Music Inc., No. 3:12-0678, 2013 WL 1718048, at *3 (M.D. Tenn. Apr. 19, 2013) ("In limited circumstances, an exclusive licensee can confer standing under the Lanham Act, if the exclusive licensee has rights that amount to those of an assignee." (internal quotation marks and citation omitted)); Calvin Klein Jeanswear Co. v. Tunnel

6

Trading, No. 98 Civ. 5408 (THK), 2001 WL 1456577, at *4-5 (S.D.N.Y. Nov. 16, 2001) ("Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 1114.").

It is unclear, based on the allegations in the Complaint, whether Plaintiff's rights amount to those of an assignee. Regardless, in this case, the Court need not examine the matter further. It is undisputed that Laura Hall, sole owner and operator of Plaintiff, is the mark's registrant. Plaintiff has offered to amend the Complaint to moot this issue (Pl.'s Resp. [Doc. #42] at 6 n.3), and, in order to address any doubt regarding standing, Plaintiff should file an amended Complaint within 14 days of the Court's Order adding Laura Hall as a Plaintiff.[1]

        ii.     Duke's Use of the Mark

Duke next contends that Plaintiff's claim for trademark infringement should be dismissed because the Complaint alleges that Duke used, contributed to the use, or otherwise assisted only in the use of the term "The Divinity Refectory," while the licensed mark is instead "Refectory Café." Thus, according to Duke, because the term "refectory" is the only shared portion of the mark, and because that term is generic, Duke cannot be liable for trademark infringement.

---

[1] Duke applies these same standing arguments to Plaintiff's claim brought under Section 1125. However, under Section 1125, a claim may be brought by "any person who believes that he or she is or is likely to be damaged" by the prohibited conduct. 15 U.S.C. § 1125(a). The Court need not consider the distinction further, as the contemplated amendment would moot this issue as well.

7

As Duke argues, a generic term is ineligible for trademark protection. See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 140 (4th Cir. 2000). However, whether a term is generic is a question better reserved for summary judgment. See j2 Global Comms., Inc. v. Zilker Ventures, LLC, No. CV 08-07470, 2009 WL 10290698, *5 (C.D. Cal. Apr. 22, 2009) ("Defendants' contention that Plaintiffs' marks are merely descriptive or generic is also premature, as whether a term is descriptive or generic is a question of fact."); Autodesk, Inc. v. Dassault Systemes Solidworks Corp., No. C 08-04397 WHA, 2008 WL 6742224, at *2 (N.D. Cal. Dec. 18, 2008) ("Genericness and functionality are questions of fact, making dismissal under Rule 12(b)(6) inappropriate."); Metro Sanitation, L.L.C. v. C & R Maintenance, Inc., No. 05-70673, 2005 WL 1861931, at *2 (E.D. Mich. Aug. 4, 2005) ("[W]hether a name is generic is a question of fact. The issue cannot be decided on a motion to dismiss because the test for genericness requires the court to consider whether the public perceives the term primarily as the designation of the article." (internal quotation marks and citations omitted)); Educational Tours, Inc. v. Hemisphere Travel, Inc., No. 04 C 0559, 2004 WL 887417, at *2 (N.D. Ill. Apr. 26, 2004) (finding argument that term generic "procedurally inappropriate" on a motion to dismiss and citing cases).

Arguing that resolution at this stage is nonetheless proper, Duke contends that Plaintiff admitted that the term "refectory" is generic by conceding that it means "café." Plaintiff's acknowledgement of the meaning of the term does not appear to be a concession of its genericness as Duke contends. Duke also invites the Court to take judicial notice of

8

the generic nature of the term "refectory" (Duke's Br. [Doc. #40] at 9 n.1) and attaches to its supporting brief examples of other usages of the term "refectory" in dining contexts around the country (Duke's Br. Ex. 2 [Doc. #40-2]). However, such a step at this stage would be inappropriate without allowing Plaintiff an opportunity to present evidence on its own behalf as well. Accordingly, the issue of the term "refectory's" genericness should be reserved for summary judgment, and Plaintiff's claims for trademark infringement should not be dismissed under Rule 12(b)(6).[2]

B.  Count IV – Misappropriation and Misuse of Trade Secrets

Duke next contends that Plaintiff's trade secret misappropriation claim must be dismissed because the Complaint fails to identify the allegedly misappropriated trade secrets with sufficient particularity. Under North Carolina law, "[t]o plead misappropriation of trade secrets, 'a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur.'" VisionAIR, Inc. v. James, 167 N.C. App. 504, 510-11, 606 S.E.2d 359, 364 (2004) (quoting Analog Devices, Inc. v. Michalski, 157 N.C. App. 462, 468, 549 S.E.2d 449, 453 (2003)). Accordingly, the complaint must allege "with sufficient specificity either the trade secrets . . . allegedly

---

[2] As noted, at this stage, Duke contends that Plaintiff's third claim, for contributory and/or vicarious liability for trademark infringement and/or unfair competition, must fail only because Plaintiff's direct claim fails. However, given the determination that Plaintiff's infringement claims should not be dismissed at this stage, and no other basis for dismissal of Plaintiff's third claim having been argued, Plaintiff's claim for vicarious liability should proceed as well.

9

misappropriated or the acts by which the alleged misappropriations were accomplished." Washburn v. Yadkin Valley Bank & Trust Co., 190 N.C. App. 315, 327, 660 S.E.2d 577, 586 (2008). "Federal district courts in North Carolina, including this district, have applied this pleading standard to claims under the North Carolina Trade Secrets Protection Act." RF Micro Devices, Inc. v. Xiang, No. 1:12CV967, 2013 WL 5462295, at *7 (M.D.N.C. Sept. 30, 2013). As in RF Micro Devices, "[f]or purposes of this motion, this court will assume that this pleading standard applies in federal court under the *Erie* doctrine." Id.

Here, the First Amended Complaint provides that "Bon Vivant's recipes and product sourcing and pricing information ('Bon Vivant's Trade Secrets and Confidential [Information]') constitutes Trade Secrets under North Carolina Law as they are business information such as formula, methods, techniques, and compilations of information from which Bon Vivant derives independent actual or potential commercial value from the information not being generally known or readily ascertainable." (First Am. Compl. [Doc. #24] ¶ 55.) Bon Vivant goes on to describe its Trade Secrets and Confidential Information as "including, but not limited to, supplier lists, invoices, pricing, employee information, and recipes." (Id. ¶ 72.) Elsewhere in the Complaint, Plaintiff states that "Plaintiff's recipes, product sourcing, processes, and cost information and other Trade Secrets and Confidential Information, as defined herein, constitute Trade Secrets under the North Carolina Trade Secret Protection Act." (Id. ¶ 167.) To the extent the Complaint identifies recipes as constituting trade secrets, the Complaint describes The Refectory Café's menu to include "its

10

signature menu items of Indian Dal, Vegan Chili, Baked Oatmeal, Chicken in Peanut Sauce, Grilled Cheese and Tomato Soup, and its broad but eclectic menu focused on healthy, sustainable and locally-sourced food . . . ." (Id. ¶ 30.)

Duke argues that "[a]t no point in the Complaint does Plaintiff identify precisely what recipes it claims constituted trade secrets, what 'product sourcing,' what 'processes' or what 'cost information' and other trade secrets Plaintiff allegedly owns and believes that Duke and/or other defendants misappropriated." (Duke Br. [Doc. #40] at 13.) Duke further appears to take issue with Plaintiff's omission of the specific recipes for the menu items identified in the Complaint and argues that Plaintiff failed to "allege[] facts sufficient to suggest that Plaintiff in fact took steps that were reasonable under the circumstances to protect its purported trade secrets from disclosure." (Duke Br. [Doc. #40] at 15.)

Having considered the parties' contentions, the Court concludes that Plaintiff's allegations regarding its recipes, supplier lists, product sourcing, supplier lists, pricing, and cost information are sufficient to survive Defendant's Motion to Dismiss. That is, in conjunction with the Complaint's description of The Refectory Café's menu, and on the facts of this case involving a relatively small food services operation alleging that Defendants who were intimately familiar with its operations misappropriated those items, there is sufficient information for Defendant to delineate that which it is accused of misappropriating and for Defendants to believe those items would have constituted trade secrets. See, e.g., Le Bleu Corp. v. B. Kelley Enters., Inc., No. 2014 WL 2589495, at *5

(N.C. Super. Dec. 9, 2014) (holding sufficient a description of proprietary information defined as "customer lists, pricing information, transaction histories, key contacts and customer leads"). Furthermore, the First Amended Complaint alleges that Plaintiff stored its confidential information securely using a website called "Cheftec" (First Am. Comp. [Doc. #24] ¶ 110) and that an employee of CORE Catering, acting on behalf of Defendants CORE, Eder and Duke, falsely represented that she was a Bon Vivant employee in order to gain access to that information (id. ¶¶ 111-12). In addition, although the food items listed in the Complaint are well-known, a specific recipe may still warrant trade secret protection, and requiring allegations of each recipe in the Complaint would go beyond what is required under either the law of North Carolina or Rule 8.³ As to any further detail that might be desired by Defendant as to these items, "[t]he parties will have the opportunity to further

---

³ Indeed, in analyzing South Carolina law, the Fourth Circuit has stated:

> [E]ven if the elements of the trade secret are public, if the particular alchemy behind the item as a whole is not, then it is considered protectable. [The defendant] uses the analogy of a Mrs. Fields cookies; general recipes for chocolate chip treats are common, but the recipe specific to Mrs. Fields is still considered a trade secret. Several cases support his point. See, e.g., Lowndes Products, Inc. v. Brower, 259 S.C. 322, 328, 191 S.E.2d 761 (1972) ("A trade secret can exist in the unique combination of otherwise known components; although each of its parts, by itself, may be in the public domain, the unified process, design and operation of the combination may be the essence of the secret."); Servo Corp. of Am. v. General Elec. Co., 393 F.2d 551, 555 (4th Cir. 1968) (a litigant may not "avoid the consequences of the breach of confidence by piecing together in retrospect bits of information which had been disclosed in a variety of places and which as a combination were not clearly a matter of public knowledge."); *Elizabeth Carpenter, 20 S.C. Jur. Intellectual Property § 74 n.3 (2010)* (collecting cases); *Louis Altman & Mall Pollack, 2 Callman on Unfair Competition, Trademarks, and Monopolies § 14:22 (2008)* (The internal facts of a business . . . [t]he subject matter is not necessarily new, novel or unique; it may be something which, when connected with a known factor, may be so valuable to a business that its continued concealment is of paramount importance.")

Hill Holliday Connors Cosmopulos, Inc. v. Greenfield, 433 F. App'x 207, 222-23 (4th Cir. 2011).

delineate the trade secrets at issue . . . through the discovery process." RF Micro Devices, 2013 WL 5462295, at *8.

Moreover, to the extent that Duke contends that the allegations are not sufficiently specific as to its particular involvement in the alleged misappropriation of trade secrets, the Court notes that the Complaint alleges that Duke required Defendant CORE to misappropriate Plaintiff's menu and pricing (¶ 77), required CORE to misappropriate Plaintiff's recipes (¶ 100), and directed and encouraged the CORE employee to obtain access to Plaintiff's confidential information on Cheftec by falsely representing that she was a Bon Vivant employee (¶ 112). Whether Plaintiff can present evidence to support these assertions, and the extent to which the specific acts of any particular Defendant would support a claim for misappropriation of trade secrets, will be a matter for summary judgment, rather than a motion to dismiss pursuant to Rule 12(b)(6).

    C.    Count V – Unfair and Deceptive Trade Practices

Duke further contends that the Complaint fails to make clear what constitutes an unfair and deceptive practice on the part of Duke. In Response, Plaintiff offers that it "asserts two claims under the Lanham Act," and argues that, as the Lanham Act is a consumer protection statute, "[b]ecause . . . Plaintiff has properly pleaded claims under the Lanham Act, it has similarly properly pled a claim under the North Carolina Unfair and Deceptive Trade Practices Act." (Def.'s Resp. [Doc. #42] at 13-14.) In reply, Duke contends that regardless of whether Plaintiff has sufficiently alleged violations of the

13

Lanham Act, Plaintiff must still allege all elements of an UDTP claim, and Plaintiff has failed to do so.

Although the alleged violations of the Lanham Act would not amount to *per se* violations of North Carolina's UDTPA, Plaintiff's UDTPA claims may still be based on the underlying allegations that Defendants attempted to deceive the public into thinking The Divinity Refectory was in fact The Refectory Café. See Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 805 (2001); see also Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 248 S.E.2d 739, 746 (1978). To state a claim for unfair and deceptive trade practices, a plaintiff must allege "(1) [the defendant] committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to [Plaintiff] or to [Plaintiff's] business." Walker v. Sloan, 137 N.C. App. 387, 395, 529 S.E.2d 236, 243 (2000).

In this case, given the allegations of Duke's efforts to create confusion regarding the The Divinity Refectory and The Refectory Café, and the lack of any argument that the restaurants are not in or affecting commerce, the first two elements are met. With respect to the third, Duke contends that "Plaintiff has done no more than presented a conclusory allegation that it has been damaged by the acts of Defendants, but has not provided credible factual allegations that support such damage. In fact, Plaintiff affirmatively stated that the café it was operating at the Divinity School was a money-loser, thereby casting considerable doubt on the credibility of any allegations of damage." (Duke Br. [Doc. #40] at 18.)

14

However, to the extent Duke asks to Court to reject Plaintiff's allegations on credibility grounds, such a determination is inappropriate on a motion to dismiss. Moreover, with respect to the allegations themselves, the First Amended Complaint alleges that, "on a near daily basis, customers at The Refectory Café at Duke Law School complain about a meal that they had at The Divinity School 'location'" (First Am. Comp. [Doc. #24] ¶ 119) and that, "[a]s a result of consumer dissatisfaction with the quality of The Divinity Refectory's offerings, and the misperception that its second-rate products were associated or affiliated with, or sponsored by The Refectory Café, The Refectory Café has suffered a diminution of its goodwill and reputation and, as a result, lost customers" (id. ¶ 123). In this case, the Complaint's allegations of Duke's role in creating a dining establishment designed to exploit The Refectory Café's reputation in the marketplace and the ensuing alleged injury to reputation and customer base are sufficient to state a plausible claim. See, e.g., Granutec, Inc. v. St. Paul Fire and Marine Ins. Co., No. 5:96-CV-489, 2008 WL 312146, at *3 (E.D.N.C. Jan. 16, 1998) ("[Statutory unfair competition] extends to all unfair and deceptive practices, including acts analogous to 'passing off,' such as selling products which have been 'mimicked' in order to exploit a competitor's reputation in the market.").

    D.    Count VI – Unfair Competition

Finally, with respect to Plaintiff's unfair competition claim, Duke asserts that its previous arguments regarding unfair and deceptive trade practices apply equally here. Moreover, Duke contends that "Plaintiff has alleged no facts that credibly suggest Duke

15

itself 'competes' with Plaintiff in the operation of cafes of the type with which Plaintiff previously was involved on Duke's campus." (Duke Br. [Doc. #40] at 18.)

"The tort of common law unfair competition is recognized in North Carolina 'as an offense committed in the context of competition between business rivals.'" Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 697 (M.D.N.C. 2011) (quoting Henderson v. U.S. Fidelity & Guar. Co., 488 S.E.2d 234, 239-40 (N.C. 1997)). Although escaping precise definition, unfair competition "has been referred to in terms of conduct 'which a court of equity would consider unfair.'" Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 400, 446 S.E.2d 100 (1994) (internal citations omitted). "Unfair acts of a defendant are actionable when they damage a plaintiff's legitimate business." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987).

Plaintiff's allegations under this standard are again sufficient. As noted above, the Complaint sufficiently alleges Duke's role in creating confusion regarding The Refectory Café and The Divinity Refectory and alleged misappropriation of Plaintiff's trade secrets. Plaintiff's claim that such actions result in unfair competition with its off-campus location is at least plausible. To the extent Duke desires more specificity regarding the extent nature of any competition between The Refectory Café's off campus location and the dining establishment in the Divinity School, such information can be gathered through the discovery process. To the extent Duke disputes the extent of competition, those issues are more appropriately raised on dispositive motions at the conclusion of discovery.

16

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant Duke University's Motion to Dismiss Complaint [Doc. #39] should be granted in part and denied in part in that Plaintiff should, within 14 days of the Court's order, amend its Complaint to add Laura Hall as a Plaintiff, but that the Motion to Dismiss otherwise be denied, without prejudice to further consideration of the issues raised therein on subsequent dispositive motions at the close of discovery.

This, the 25th day of August, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge